**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

TYRONE RIVERS,

                                        Plaintiff,

            - v -                                                 Civ. No. 9:09-CV-309
                                                                           (FJS/RFT)
SPINNELLA,[1] *Correctional Officer, Marcy Correctional*
*Facility*,

                                        Defendant.

**APPEARANCES:**                                      **OF COUNSEL:**

TYRONE RIVERS
Plaintiff, *Pro Se*
07-A-6833
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14871

HON. ANDREW M. CUOMO                          ADELE TAYLOR SCOTT, ESQ.
Attorney General for the State of New York     Assistant Attorney General
Attorney for Defendant
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

<u>**REPORT-RECOMMENDATION and ORDER**</u>

        *Pro se* Plaintiff Tyrone Rivers files this civil rights action, pursuant to 42 U.S.C. § 1983,

asserting that Defendant Spinella failed to stop or prevent an assault on Plaintiff in violation of his

constitutional rights under the Eighth Amendment.  Dkt. No. 1, Compl.  Defendant now brings a

Motion for Summary Judgment under Federal Rule of Civil Procedure 56(b), which Plaintiff

---

        [1] Defendant is named in Plaintiff's Complaint and throughout Plaintiff's pleadings as Officer Spinnella.
However, the record before us clearly indicates the correct spelling of this Defendant's last name as "Spinella," which
this Court will now adopt.

opposes.  Dkt. Nos. 49, Mot. for Summ. J.; 53, Pl.'s Resp. to Mot.  For the reasons that follow, we recommend that Defendant's Motion be **granted**.

## I. BACKGROUND[2]

On February 2, 2007, the date of the alleged incident, Plaintiff was housed at the Marcy Correctional Facility, which is a medium-security facility for inmates sentenced to fewer than seven years of incarceration or who are considered lower-level security threats.  Def.'s 7.1 Statement at ¶ 2; Dkt. No. 49-2, Jeremy Spinella Decl., dated Mar. 17, 2010, at ¶ 3.  Plaintiff was assigned to the D unit dormitory, which is divided into two areas by a wall with a door and a large window; the two areas are a sleeping room where inmates maintain their individual cubicles and a community area consisting of a day room, kitchen, and shared bathroom.  Spinella Decl. at ¶¶ 6-7; Def.'s 7.1 Statement at ¶¶ 7-9.  In order to maintain visual surveillance of both areas, a correctional officer's desk is located inside the sleeping area on an elevated platform in front of the window.  Def.'s 7.1 Statement at ¶ 10.  Correction Officer Spinella, the Defendant in this matter, was the stationed desk officer on duty on the day at issue.  *Id.* at ¶ 6.

Both Plaintiff and Defendant agree that on February 2, 2007, a physical altercation occurred between Plaintiff and another inmate, Rivera,  and, as a result, Plaintiff was hospitalized.[3]  *Id.* at ¶¶ 11-14;  Pl.'s 7.1 Statement at ¶¶ 11-12.  Plaintiff alleges that he was attacked by Rivera without

---

[2] The following facts were derived mainly from the Defendant's Statement submitted in accordance with Northern District of New York Local Rule 7.1, and Plaintiff's Affidavit and Response thereto.  *See* Dkt. Nos. 49-1, Def.'s Statement Pursuant to Rule 7.1(a)(3) [hereinafter Def.'s 7.1 Statement]; 53, Pl.'s Statement Pursuant to Rule 7.1(a)(3) [hereinafter Pl.'s 7.1 Statement].  Where Plaintiff has not objected to a particular statement of fact proffered in the Defendant's 7.1 Statement, we will not cite to both Statements.  Most, if not all, of the material facts are not in dispute.  Rather, the issue is whether those undisputed facts give rise to a constitutional violation.

[3] The large majority of both Plaintiff's Complaint and his Response to Defendant's 7.1 Statement discusses, in great depth and detail, what led up to and the aftereffects of this physical altercation.  *See generally* Compl. & Pl.'s 7.1 Statement.

justification or warning, and that Inmate Rivera hit him with a combination lock inside a sock, Pl.'s 7.1 Statement at ¶¶ 11 & 16, though no weapon was recovered after the fight, Compl. at pp. 6-7;[4] Spinella Decl. at ¶ 10.  The parties agree that the Defendant jumped up from his desk when he heard a commotion on the other side of the wall, and, through the window, he saw Plaintiff and Inmate Rivera physically engaged.  Def.'s 7.1 Statement at ¶ 11.  When Defendant arrived in the day room, he observed Inmate Rivera striking Plaintiff in the face with a closed fist while a crowd of other inmates gathered around them.[5]  Id. at ¶ 13; Spinella Decl. at ¶ 13.  Defendant called for backup.  Def.'s 7.1 Statement at ¶ 12.  Inmate Rivera did not respond to several orders from Defendant to stop and instead he hit Plaintiff several more times before fleeing to the bathroom.  Id. at ¶ 13; Spinella Decl. at ¶13.  Backup officers arrived on the scene and, after finding Rivera in a bathroom stall, restrained him.  Spinella Decl. at ¶ 14.  Plaintiff was rendered unconscious and taken to a hospital for treatment, where it was determined he suffered a concussion, facial contusions and lacerations, among other consistent injuries.  Dkt. No. 20, Suppl. Docs. in Supp. of Pl.'s Compl., at pp. 11-19.

Defendant wrote a misbehavior report against both Plaintiff and Inmate Rivera for fighting, violent conduct, and creating a disturbance.  See Spinella Decl., Ex. A, Inmate Misbehavior Reps. Plaintiff was found guilty of those charges at the conclusion of a Tier II Disciplinary Hearing.  Id. The Tier II determination was affirmed on appeal on February 21, 2007.  Dkt. No. 49-3, Teri Thomas Decl., date unreadable, at ¶ 13.  On or about March 1, 2007, Plaintiff filed a grievance

---

[4] Attached to his pro forma Complaint are seventeen (17) pages where Plaintiff lays out his factual allegations. These pages are devoid of paragraph breaks or enumerated headings.  When referenceing this factual narrative, the Court will utilize the page numbers Plaintiff has assigned therewith.

[5] Plaintiff states that Defendant stood for a few moments observing the scene and, though it appeared that the Defendant was about to enter the day room, Plaintiff lost consciousness before he could see if the Defendant did in fact enter or respond to the scene.  Pl.'s 7.1 Statement at ¶¶ 11-13.

regarding being subjected to disciplinary action as a result of the incident, but the grievance was dismissed as moot as a result of Plaintiff's transfer to another facility. *Id*. at ¶ 18. Plaintiff did not appeal the dismissal of his grievance for the purpose of determining if the dismissal was appropriate. *Id.* at ¶ 15. Plaintiff asserts he was only recently, through the discovery phase of this lawsuit, informed of the denial of his grievance. Pl.'s 7.1 Statement at ¶ 21. According to Karen Bellamy, Director of the Inmate Grievance Program of the New York State Department of Correctional Services ("DOCS"), Plaintiff has not filed any grievance relative to his complaint that the Defendant failed to protect him from the assault. Dkt. No. 49, Karen Bellamy Decl., dated Mar. 16, 2010, at ¶¶ 6-9.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c)(2), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

*-4-*

To defeat a motion for summary judgment, the non-movant must "set out specific facts showing [that there is] a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e)(2); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion," and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey*

-5-

*v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### B. Exhaustion of Administrative Remedies

Defendant Spinella raises the affirmative defense that Plaintiff failed to exhaust available administrative remedies.  The Prisoner Litigation Reform Act of 1995, 42 U.S.C. § 1997(e)(a), states that "[n]o action shall be brought with respect to prison conditions under [section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004).

DOCS has created a three-step administrative process to address inmate complaints, called the Inmate Grievance Program.  *See Abney v. McGinnis*, 380 F.3d 663, 668 (2d Cir. 2004); N.Y. COMP. CODES R. & REGS. tit. 7, Parts 701 & 702.  First, the inmate must file a grievance complaint with the grievance clerk within twenty-one days of the incident.  N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a).  The complaint is then submitted to the Inmate Grievance Resolution Committee ("IGRC") for review.  *Id.* at § 701.5(b).  Second, if the inmate is not satisfied with the IGRC decision, then the inmate may appeal to the prison superintendent by completing the appeal section of the IGRC response form and submitting it within seven days of receipt.  *Id.* at § 701.5(c).  Third, the inmate can appeal the superintendent's determination whereupon the Central Office Review Committee ("CORC") will make a final administrative determination.  *Id.* at § 701.5(d).  Upon the completion of all three steps, an inmate may "seek relief pursuant to 42 U.S.C. § 1983."  *Colon v. Harvey*, 344 F. Supp. 2d 896, 897 (W.D.N.Y. 2004) (citing *Neal v. Goord*, 267 F.3d 116, 122 (2d

*-6-*

Cir. 2001) & *Santos v. Hauck*, 242 F. Supp. 2d 257, 259 (W.D.N.Y. 2003)).

Here, Plaintiff submitted a letter to the Grievance Committee on or about March 1, 2007, wherein he inquired about the status of a grievance he purportedly filed two weeks prior.[6]  Thomas Decl. at ¶ 8, Ex. B, Pl.'s Lt. to Grievance Comm., dated Mar. 1, 2007.  This grievance focused on Plaintiff's opposition to receiving a misbehavior report and the determination of his Tier II Hearing.  There was no specific mention nor reference to Defendant Spinella, nor a suggestion that he failed to protect or take appropriate action to prevent Plaintiff's harm.  *See* Thomas Decl. at ¶¶ 9, 11, & 12; Pl.'s Letter to Grievance. Comm.  Plaintiff's grievance was dismissed, in part, as moot based upon his transfer to another facility and because the grievance process was not the proper procedural vehicle for contesting a disciplinary sentence.  *See* Thomas Decl. at ¶ 13 & Ex. B.  Plaintiff did not appeal the IGRC's dismissal, but nevertheless opposes Defendant's claim of non-exhaustion.  *See* Dkt. No. 53-1, Pl.'s Mem. of Law in Opp'n to Def.'s Mot. Summ. J., at pp. 8-9.  Plaintiff claims he never received a response to his filed grievance and was told by a member on the IGRC board that "no such grievance exist[s]."  *Id.* at p. 9.  Regardless, Plaintiff did not allege in his grievance nor in his Tier II Disciplinary Proceeding anything that could be construed as a complaint against Defendant for failing to protect the Plaintiff or prevent Plaintiff's injuries.  *See* Thomas Decl. at ¶ 11 & Ex. B, Pl.'s Letter to Grievance Comm.; *see also* Spinella Decl., Ex. A, Disciplinary Hr'g Tr.  Plaintiff responds that because his grievance concerned the resulting discipline from the incident, he therefore filed a "grievance against the author/writer of the inmate misbehavior report," to wit,

---

[6] Despite its tardy submission, it appears that Plaintiff's March 1, 2007 letter was accepted as a formal grievance and assigned the number "MCY 12800-07."  Thomas Decl. at ¶ 8 & Ex. B.  Plaintiff has not provided this Court with a copy of the grievance/letter he submitted prior to this date.  In fact, his evidence contains this same letter.  With all parties in agreement, we will refer to this letter as Plaintiff's grievance and use the contents therewith to assess the exhaustion issue.

Officer Spinella.  Pl.'s Mem. of Law in Opp'n to Def.'s Mot. Summ. J. at p. 7.  Merely alleging

Defendant's name in connection to the misbehavior report, however, is not the same as alleging that

Defendant failed to protect Plaintiff in violation of the Eighth Amendment.  Furthermore, though

Plaintiff claims he was unaware of the grievance dismissal and perhaps even led astray when he

sought information, he cannot escape the fact that he failed to alert prison officials, through his

submitted grievance, the facts and circumstances surrounding the claims raised herein.  In this

regard, we need not consider whether Defendant should be estopped from asserting this affirmative

defense.  Thus, we find that Plaintiff failed to exhaust his administrative remedies and, accordingly,

Defendant's Motion for Summary Judgment should be **granted** on this basis.  Nevertheless, this

Court will continue to the merits of Plaintiff's action.

### C. Eighth Amendment Claim of Failure to Protect

Plaintiff's Complaint asserts only that Defendant Spinella failed to protect him from being

attacked by Inmate Rivera, and thereby subjected him to cruel and unusual punishment in violation

of the Eighth Amendment.

The Eighth Amendment imposes a duty upon prison officials to take reasonable measures

"to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S.

825, 833-34 (1994) (citations omitted).  To examine a failure to protect claim under the Eighth

Amendment, a court must determine whether the inmate has demonstrated that "1) he or she was

incarcerated under conditions posing a substantial risk of serious harm, and that 2) prison officials

exhibited deliberate indifference to the inmate's plight." *Polson v. Fischer*, 2010 WL 2985476, at

*6 (N.D.N.Y. June 16, 2010) (citing, *inter alia*, *Farmer v. Brennan*, 511 U.S. at 834, 837).  This

analysis entails both an objective and subjective inquiry.

-8-

To establish that a defendant was deliberately indifferent to an inmate's plight under an Eighth Amendment failure to protect claim, a plaintiff must show that prison officials actually knew of, but disregarded, an excessive risk to his or her health and safety. *Farmer v. Brennan*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *see also Matthews v. Armitage*, 36 F. Supp. 2d 121, 124-25 (N.D.N.Y. 1999).  Furthermore, "a prisoner cannot base a federal civil rights action brought under 42 U.S.C. § 1983 on claims of a negligent failure of state prison officials to protect him from injury at the hands of another inmate." *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 28 (2d Cir. 1988).

Plaintiff alleges that the altercation between Inmate Rivera and himself was preceded by verbal exchanges and hostile gestures in the kitchen and day room areas.  *See* Compl. at pp. 1-8.  Plaintiff also, on multiple occasions in both his Complaint and Response to Defendant's Statement Pursuant to Rule 7.1, describes how Defendant Spinella was unaware of these exchanges.  *See* Pl.'s 7.1 Statement at ¶ 16 ("Plaintiff was a victim of a <u>sneak-attack</u> (attack without warning) by being struck with force from behind with a combination lock inserted into a sock (Plaintiff had no prior warning/opportunity to advise/inform Officer Spinella that Plaintiff was in danger).") (emphasis in original); *see also* Compl. at pp. 3-4.  Plaintiff alleges that the attack by Inmate Rivera was unexpected and unprovoked.  Compl. at pp. 12-13; Pl.'s 7.1 Statement at ¶ 16.  Plaintiff does not, however, allege that Officer Spinella had any information, notice, or reason to suspect or draw an inference that an altercation was about to break out that could produce a substantial risk of serious harm.  In fact, Plaintiff explains that Officer Spinella was "alerted" to the altercation and jumped up from his chair only when Plaintiff, who was "able to hold on to inmate Rivera . . . pressed up

against Officer Spinella's window."  Compl. at p. 7; *see also* Spinella Decl. at ¶ 11 ("I was first alerted to the incident when I heard, and then observed through the window, plaintiff and another inmate engaged in a physical altercation.").  Therefore, there are no specific facts, nor even allegations, that indicate the Defendant was aware that Plaintiff faced a substantial risk of serious harm until the altercation had already started.  Furthermore, reading the Plaintiff's Complaint and pleadings liberally,[7] any assertion that Defendant Spinella neglected his duty by failing to notice the verbal and gestural signs leading up to the incident must be dismissed as amounting to nothing more than mere negligence, which does not establish a cause of action under the Eighth Amendment.

Plaintiff also alleges that Defendant acted with deliberate indifference after he observed the altercation between the inmates.  Specifically, and despite his admission that he was unconscious during the period in question, Plaintiff presents the following allegations regarding Defendant's actions upon being alerted to the altercation:

> After being struck the first time from behind in the side of the face by inmate Rivera when I managed to turn around and grab hold of him, I was just losing consciousness - just before Officer Spinnella stepped into the day-room so, therefore Officer Spinnella had plenty of time to intervene and prevent the attack.

Compl. at p. 14.

> Plaintiff did not witness/see Correction Officer Spinella respond to the scene of attacks/multiple assaults - as [Plaintiff] was completely unconscious after glimpsing thru [sic] observation window to see Correction Officer Spinella rise-up from his rolling chair behind his desk.  Also, if back-up was called immediately then[] how did Plaintiff suffer-sustain multiple severe injuries?

Pl.'s 7.1 Statement at ¶ 12 (internal quotation marks omitted).

These allegations, without more, cannot be sustained against the Defendant's Motion for Summary Judgment.  Plaintiff brings no specific facts establishing that Defendant failed to act after being

---

[7] Perhaps too liberally, as nowhere in the Complaint does the Plaintiff insinuate that Defendant should have known a physical attack was about to occur.  Rather, as detailed above and throughout his pleadings, Plaintiff describes how unexpected and unjustified the attack was, even to himself.

alerted to the altercation.  Rather, all evidence in the record before this Court is to the contrary: after alerted to the fight in progress, Defendant entered the day room immediately, ordered Inmate Rivera multiple times to stop, and called for help.  Def.'s 7.1 Statement at ¶¶ 11-13; Spinella Decl. at ¶¶ 11-14.  These facts are not controverted by the Plaintiff, nor could they be given Plaintiff's admission that he was rendered unconscious and lacked recollection of the incident.  Plaintiff seems to claim that his injury alone means that the Defendant failed to adequately protect him in violation of the Eighth Amendment.  While Inmate Rivera struck Plaintiff multiple times ignoring Defendant's repeated orders to stop and before fleeing to the bathroom, Spinella Decl. at ¶¶ 12-13; Pl.'s Mem. of Law in Opp'n to Def.'s Mot. Summ. J. at pp. 11-12, it "is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety[,]"  *Farmer v. Brennan*, 511 U.S. at 834; *see also Allah v. Kemp*, 2010 WL 1036802, at *4 (N.D.N.Y. Feb. 25, 2010) (quoting *McGriff v. Coughlin*, 640 F. Supp. 877, 880 (S.D.N.Y. 1986) ("The Constitution does not guarantee an assault-free prison environment; it promises only reasonable good faith protection.")).

Plaintiff does not meet his burden at summary judgment to present specific facts showing there is a genuine issue for trial.  Therefore, it is recommended that Defendant's Motion for Summary Judgment be **granted** as to Plaintiff's Eighth Amendment failure to protect claim.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendant's Motion for Summary Judgment (Dkt. No. 49) be **granted** and this case be **dismissed**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   November 4, 2010
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

*-12-*